# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| CATHERINE E. SHARKEY and RON SEVEAN, | ) ) ) Civil Action No. 3:18-cv-00019 |
| Plaintiffs, | ) ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| FORTRESS SYSTEMS INTERNATIONAL, INC., d/b/a FORTRESS MOBILE, and ZHONG SU, individually, | ) ) ) ) |
| Defendants. | ) ) |

## AMENDED COMPLAINT

COMES NOW Plaintiffs Catherine E. Sharkey and Ron Sevean ("Plaintiffs") file this Amended Complaint against Defendants Fortress Systems International, Inc., d/b/a Fortress Mobile ("Fortress"), and Zhong "Jack" Su, inclusive (hereinafter collectively "Defendants"), seeking to recover for Defendants' violations of the Fair Labor Standards Act (hereinafter "FLSA") 29 U.S.C. §§201 *et. seq.,* and the North Carolina Wage and Hour Act (hereinafter "NCWHA") N.C. Gen. Stat. §§ 95-25.1 *et. seq*. Plaintiff Sharkey also seeks redress for violations of the Equal Pay Act of 1963 ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and for retaliation after complaining about the unequal pay.

## NATURE OF THE ACTION

1. Plaintiffs allege that they are entitled to recover (i) unpaid overtime wages for all hours worked exceeding forty (40) in a workweek, and (ii) statutory penalties, including

liquidated damages, pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., specifically 29 U.S.C. §§ 207, 216(b).

2. Plaintiffs further complain that they are entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendants' violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 et. seq.

3. Plaintiff Sharkey complains that she was required to take a substantial pay cut that would result in her earning substantially less than her male counterpart. Plaintiff complained internally about the disparate treatment caused by the reduction in pay but Fortress did nothing to remedy the situation. There was no justification for Fortress's decision to pay Sharkey less than her male counterpart. At all relevant times, Sharkey was a covered employee under the EPA and Title VII.

4. Plaintiffs are former "contractors" employed by Fortress, and Zhong "Jack" Su, who were misclassified as Independent Contractors during the relevant time period.

5. Defendants are providers of mobile surveillance and smart fleet management solutions for pupil transit, mass transit, and commercial vehicle fleet and equipment management industries, with a principal location in Mecklenburg County at 3801 Roselake Drive, Charlotte, North Carolina 28217.

## THE PARTIES

6. Plaintiff Catherine E. Sharkey is now, and was at all times mentioned herein, an individual over the age of eighteen (18), and a resident of Amherst, Virginia.

7. Plaintiff Ron Sevean is now, and was at all times mentioned herein, an individual over the age of eighteen (18), and a resident of Wantage, New Jersey.

8. During the relevant time period, Plaintiffs regularly worked for Defendants as an "Exclusive Agent," within the meaning of the FLSA during the relevant three-year period. Plaintiffs did not properly receive overtime compensation for hours worked in excess of 40 hours per week or the payment of employment taxes and FICA obligations on any and all hours worked.

9. Defendant Fortress Systems International, Inc., d/b/a Fortress Mobile, a North Carolina Corporation, with its principal place of business at 3801 Roselake Drive, Charlotte, North Carolina 28217.

10. Defendant Zhong "Jack" Su is an officer of and owns and operates Fortress Systems International, Inc., d/b/a Fortress Mobile, a North Carolina Corporation, with its principal place of business at 3801 Roselake Drive, Charlotte, North Carolina 28217.

11. Defendant Zhong "Jack" Su allocated compensation to employees, made wage payment decisions, set policy and practices regarding employee pay and made, and continue to make, hiring and firing decisions for Defendant Fortress Systems International, Inc. d/b/a Fortress Mobile.

12. At all relevant times, Plaintiffs were Defendants' "employees" as that term is defined by the FLSA and the NCWHA.

13. At all relevant times, Defendants were, and are, "employers" as the term is Defined by the FLSA and the NCWHA.

14. Plaintiffs are informed and believe, and based upon such information and belief allege, that the Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this Complaint.

15. Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times herein mentioned, all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

16. Plaintiffs are further informed and believe, and based upon such information and belief allege, that at all times herein mentioned, Defendants, and each of them, proximately caused Plaintiffs and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

17. Plaintiffs are further informed and believe, and based upon such information and belief allege, that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiffs.

18. Plaintiffs are further informed and believe, and based upon such information and belief allege, that Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

4

19. Plaintiffs are further informed and believe, and based upon such information and belief allege, that Zhong "Jack" Su made all decisions on a daily basis regarding pay policies and exerted financial and operative control over Fortress Systems International, Inc. and are therefore individually liable under the FLSA and North Carolina State laws.

## JURISDICTION AND VENUE

20. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.*

21. Defendants employed Plaintiffs and employs/employed others in this judicial district, owns and operates a business in this judicial district, and is registered to transact business in the State of North Carolina.

22. As a condition of employment, Defendants required Plaintiffs to sign contracts with a North Carolina choice of law and venue provision.

23. The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

24. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## COVERAGE ALLEGATIONS

25. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

27. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

28. At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

29. At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

30. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

31. At all times hereinafter mentioned, Defendants have been an employer under the EPA and Title VII. Upon information and belief, Defendants employ in excess of fifty employees when all are classified properly.

32. At all times hereinafter mentioned, Plaintiffs were employees within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

## STATEMENT OF FACTS

33. Plaintiffs are former contractors employed by Fortress, and Zhong "Jack" Su, who were misclassified as Independent Contractors during the relevant time period.

34. Defendants are providers of mobile surveillance and smart fleet management solutions for pupil transit, mass transit, and commercial vehicle fleet and equipment management industries, and is headquartered in Charlotte, North Carolina.

35. Plaintiffs were generally responsible for sales activities relating to the purchase of Defendants' "solutions" by customers, such as school systems and companies with large fleets.

36. Plaintiffs were required to sign a "Sales Agent Agreement" as a condition of employment.

37. Plaintiffs, as Defendants' independent contractors, did not possess a business license.

38. By Defendants' policies, customs, and practices, Defendants exercised extraordinary levels of control over the manners and means by which Plaintiffs performed job duties. Such controls included, but were not limited to, (a) setting Plaintiffs' schedules, (b) prohibiting Plaintiffs from working for other companies, (c) requiring Plaintiffs to engage in a minimum number of customer contacts, (d) requiring Plaintiffs to wear a company-provided uniform in public, (e) requiring Plaintiffs to attend training provided by Defendants, and (f) subjecting Plaintiffs to discipline for failing to follow Defendants' policies and procedures.

39. During the time period relevant to this action, Plaintiffs were employed by Defendants as Independent Contractors, and were regularly required to work in accordance with the Defendants' processes and procedures, including, *inter alia*, (a) set work hours, (b) company provided training, (c) payment of travel expenses and business costs, (d) required use of Defendants' vendors for travel, and (e) provision of equipment needed to perform the job.

40. By retaining and exercising such control, Plaintiffs were, in fact, employees under North Carolina and Federal law.

41. Plaintiffs contend Defendants improperly classified Plaintiffs as independent contractors rather than W-2 employees pursuant to the FLSA and the NCWHA. However, during the relevant time period that Plaintiffs were considered independent contractors by the Defendants, Plaintiffs did not regularly or customarily perform any Independent Contractor functions.

42. By misclassifying Plaintiffs as an independent contractors, Defendants have sought to avoid various duties and obligations owed to employees under the NCWHA and the FLSA, including but not limited to: (a) the duty to pay minimum wage for all hours worked, (b) the duty to pay wages due on termination, (c) the duty to pay employment taxes and FICA obligations, and other legal obligations.

43. Moreover, by misclassifying Plaintiffs as independent contractors, Defendants have forced Plaintiffs to bear many of the costs of running Defendants' business.

44. As a result of misclassifying Plaintiffs as independent contractors and constructing pay packages that did not compensate Plaintiffs for all work performed, Defendants have regularly failed to compensate Plaintiffs for all work performed and for all hours worked.

45. For at least three (3) years prior to the filing of this action, Defendants had, and continue to have, a consistent policy and practice of misclassifying its employees as Independent Contractors, thereby depriving them of benefits, payment of employment taxes and Social Security and Medicare taxes, overtime wages, and appropriate reimbursement for expenses.

8

Case 3:18-cv-00019-FDW-DCK   Document 29   Filed 03/11/19   Page 8 of 20

46. Defendants' practices require its Independent Contractors, including Plaintiffs, to work in excess of forty (40) hours per week without paying them proper overtime compensation as required by federal and state wage laws.

47. Defendants provide mobile surveillance and smart fleet management solutions throughout the United States.

48. Defendants designated Plaintiffs as independent contractors.

49. Plaintiffs worked as Exclusive Agents for Defendants and was misclassified as an independent contractor.

50. Plaintiffs were generally responsible for selling Defendants' goods and services.

51. Plaintiffs' work tasks included, but were not limited to, (a) an annual sales quota, (b) required minimum daily call volumes, (c) required minimum weekly customer meetings, (d) required minimum weekly pilots, and (e) required minimum weekly sales quotes.

52. Plaintiffs were subject to discipline and termination for failure to meet certain performance requirements.

53. Plaintiffs were required to "present" to customers as an employee of Defendants.

54. Additionally, Plaintiffs were required to record "ALL" sales activities on a daily basis, prepare debriefing documents for every prospect contact, enter data into the Zoho CRM system as well as other written reports.

55. Defendants dictated the hours Plaintiffs were to spend in the office, and provided each with a company email address, business cards, and company-identifying clothing.

56. Defendants provided Plaintiffs with equipment to perform job responsibilities, including, but not limited, to a personal computer and wireless routers.

57. Defendant provided detailed training to Plaintiffs.

58. Defendant required Plaintiffs to pay all expenses but required prior approval of expenses.

59. Defendants required Plaintiffs to use Defendants' vendors for all travel arrangements.

60. Defendants retain and exercise significant control over the details of Plaintiffs' work.

61. Plaintiffs were not engaged in a distinct occupation or business apart from her efforts on behalf of Defendants.

62. Defendants prohibited Plaintiffs from performing any tasks, duties or other activities for any other business enterprise.

63. Defendants issued payments to Plaintiffs as individuals, not as a business entity.

64. Plaintiffs had no control over the rates charged to Defendants' customers, nor did they have control over their own compensation rates.

65. Despite Defendants' pervasive control over all aspects of its products and services and Plaintiffs, Defendants misclassified Plaintiffs as independent contractors.

66. As a result of misclassifying Plaintiffs as independent contractors, and constructing pay packages that did not compensate Plaintiffs for all work performed, Defendants suffered or permitted Plaintiffs to work portions of the day, for which Defendants failed to compensate.

67. At all relevant times herein, and for the reasons discussed herein, Defendants' compensation schemes did not fairly compensate Plaintiffs for all hours worked.

68. On June 9, 2017, the New Jersey Department of Labor ("NJ DOL"), investigating a claim by Plaintiff Sevean, concluded that the evidence showed Sevean was an employee, not an independent contractor.

69. The NJ DOL found that the Employment Agreement contained language that showed Sevean was an employee, such as "paycheck will be paid upon receipt of invoices twice

10

per month for monthly draw (advance commission) and salary" And, "a monthly salary of $6,933 (payable semi-monthly)..." The NJ DOL noted that a "paycheck" and "salary" implies employer/employee relationship.

70. The NJ DOL also relied on the facts that that Defendants supplied Sevean with business cards and paid him "a per diem of $40.00 per day for breakfast, lunch and dinner..." and that Sevean was prohibited from working for other firms while with Fortress.

71. Despite being on notice from the NJ DOL that it was misclassifying its employees as independent contractors, Defendants did nothing to bring itself into compliance with the law and continued to classify employees, including Defendant Sharkey, as independent contractors.

72. Plaintiff Sharkey began her employment with Defendants on April 1, 2017 after she was actively recruited by Defendants.

73. Sharkey had many years of sales experience when she was recruited and hired by Defendants.

74. Sharkey was qualified for her position. She had previously been highly successful in her field. So successful, in fact, that she caught the attention of Defendants.

75. Sharkey performed her job in a satisfactory fashion and up to or exceeding the expectations of Defendants.

76. Despite her qualifications and performance, Sharkey was paid substantially less than similarly situated male employees, particularly after Defendants presented her with a non-negotiable option of taking an almost 50% cut in pay or resigning from her position.

77. There was no reasonable, rational or justifiable basis for paying Sharkey less than her male counterparts and then demanding she take an even steeper pay cut.

11

Case 3:18-cv-00019-FDW-DCK   Document 29   Filed 03/11/19   Page 11 of 20

78. At the time Defendants implemented the drastic pay reduction, Sharkey was outperforming her male counterpart. Yet, Defendants did not require him to take a pay cut or resign.

79. Prior to the proposed pay cut, Sharkey did not receive any negative performance feedback and was not, to her knowledge, ever responsible for any loss of business.

80. The disparity in pay between Sharkey and her male counterpart is emblematic of Defendants' pattern and practice of paying females less then similarly situated, or even less qualified, males.

81. Defendants did not take action to correct its unlawful pay practices in response to Sharkey's complaints regarding same. Instead, it terminated her for refusing to accept the pay reduction.

82. In addition, Defendant's deleterious impact on Plaintiff Sharkey's future earning potential because it is no uncommon in the industry for potential new employers to consider past compensation when making offers of employment.

83. Defendant's conduct was willful and without justification. It was done in reckless disregard of Sharkey's federally protected rights and was also the proximate cause of her damages.

84. Sharkey complained that she was being singled out and her male counter part's pay was not being cut even though his performance was comparable to, or less productive than, hers.

85. After she complained about the unequal pay, Defendants terminated Sharkey.

12

Case 3:18-cv-00019-FDW-DCK   Document 29   Filed 03/11/19   Page 12 of 20

# COUNT I

**(Violation of Fair Labor Standards Act – Overtime Collective Action)**

86. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

87. At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

88. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

89. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods of commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that said enterprise has had employees engaged in commerce, or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

90. At all times hereinafter mentioned, Plaintiffs were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

91. At all relevant times herein, Plaintiffs were entitled to the rights, protections and benefits provided under the FLSA, 29 USC §§ 201 et. seq.

92. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of

13

goods for commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

93. Defendants are subject to the overtime pay requirements of the FLSA because they are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

94. At all times relevant, Plaintiffs were or have been employees of Defendants within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

95. Defendants violated the FLSA by failing to pay and properly calculate overtime. In the course of perpetrating these unlawful practices, Defendants have also willfully failed to keep accurate records of all hours worked by its employees.

96. Defendants failed to compensate Plaintiffs at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, and therefore, Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. § 207(a)(1).

97. Defendants failed to properly classify Plaintiffs as employees.

98. Defendants failed to pay employment taxes on behalf of Plaintiffs, including FICA, Medicare, Social Security, state and federal income taxes.

99. Plaintiffs are victims of a uniform and company-wide compensation policies, procedures, and practices. Upon information and belief, Defendants have applied, and do apply, uniform policies, procedures, and practices that illegally deprive and have deprived the Plaintiffs of overtime pay. These practices include, but are not limited to, failing to pay Independent Contractors overtime pay for the hours they worked in excess of 40 hours in a week.

100. Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs.

101. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

102. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

103. As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. 201, et seq.

## COUNT II

### (Violation of North Carolina Wage and Hour Act)

104. Plaintiffs reassert the allegations set forth in the above paragraphs.

105. Count II arises from Defendants' policy and practice of suffering or permitting Plaintiffs to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

106. Defendants violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiffs all promised and earned wages and overtime payments on the employees' regular payday for all hours worked.

107. Defendants' violation of the NCWHA was willful.

## COUNT III

**(Violation of the Fair Labor Standards Act of 1938 As Amended by the Equal Pay Act of 1963, 29 U.S.C. §206, et seq.)**

108. Plaintiff Sharkey reasserts the allegations set forth in the above paragraphs.

109. Defendants have violated the Equal Pay Act of 1963 by providing Sharkey with lower pay and compensation than similarly situated male employees on the basis her gender, female, even though Sharkey performed similar duties requiring the same skill, effort, qualifications and responsibility as her male counterpart.

110. Defendants subjected Sharkey to discriminatory pay practices and discrimination in connection with the ancillary benefits and other terms of employment in violation of the EPA.

111. Sharkey was not paid less than her male counterpart on the basis of seniority, merit, quantity or quality of production, or a factor other than sex, but was paid less due to her gender.

112. Defendants were the cause of the unlawful conduct complained of in this action.

113. The foregoing conduct constitutes a willful violation of the EPA within the meaning of that statute. A three-year statute of limitations applies to Sharkey's claims.

114. As a result of Defendant's conduct as alleged herein, Sharkey has suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to statutory, liquidated and other damages.

115. Defendant's unlawful conduct as described in this Complaint has been willful and intentional. Defendant was aware of the employment practices it undertook were unlawful, yet it did not make a good faith effort to comply with the EPA.

116.    As a result of Defendant's willful and intentional conduct, Sharkey has suffered damages and is entitled to all damages claimed in this action.

## COUNT IV

### (Violation of Title VII of the Civil Rights Act of 1964 – Sex Discrimination)

117.    Plaintiff Sharkey reassert the allegations set forth in the above paragraphs.

118.    Sharkey has exhausted her administrative remedies by filing a charge of discrimination with the EEOC on March 21, 2018 and receiving her right to sue letter on March 8, 2019.

119.    Defendants have violated Title VII by providing Sharkey with lower pay and compensation than similarly situated male employees based on her gender, female, even though Sharkey performed similar duties requiring the same skill, effort, qualifications, and responsibility as her male counterparts.

120.    Defendants subjected Sharkey to discriminatory practices and discrimination in connection with the ancillary benefits and other terms of employment in violation of Title VII.

121.    Sharkey was not paid less than her male counterpart on the basis of seniority, merit, quantity or quality of production, or a factor other than sex, but was paid less due to her gender.

122.    Defendants were was the cause of the unlawful conduct complained of in this action.

123.    The foregoing conduct constitutes a willful violation of Title VII and Defendants acted with knowledge of their unlawful conduct, after Sharkey had complained about the

unlawful conduct, with wanton, immoral and unscrupulous motives, and in reckless disregard of Sharkey's federally protected rights.

124. As a result of Defendant's conduct, Sharkey has suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to compensatory, statutory, liquidated, punitive and other damages.

## COUNT V

### (Violation of Title VII of the Civil Rights Act of 1964 – Retaliation)

125. Plaintiff Sharkey reasserts the allegations set forth in the above paragraphs.

126. When Defendants informed Sharkey of the forced pay reduction, she immediately complained to her supervisor and Defendant Su that she was being "singled out" and that her male counterpart, whose performance was the same or worse than hers, was not being forced to take a pay reduction. In complaining about the unequal pay structure, Sharkey participated in protected activity.

127. Sharkey suffered an adverse employment action because she was terminated the next day.

128. There was a causal connection between Sharkey's complaints of unequal pay and her termination.

129. Defendants' conduct was willful, wanton, oppressive and in reckless disregard of Sharkey's federally protected rights.

130. As a result of Defendant's conduct, Sharkey has suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to compensatory and other damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand and pray for:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

b) An Order pursuant to the NCWHA finding Defendants liable for unpaid back wages and liquidated damages equal in amount to the unpaid compensation due to Plaintiffs;

c) An Order pursuant to the EPA and Title VII awarding actual and compensatory damages for lost wages, benefits, entitlements, liquidated and statutory damages, and all other damages suffered by Plaintiff Sharkey;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage and overtime requirements of the FLSA;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

>*/s/ L. Michelle Gessner*
>L. Michelle Gessner, NCSB#26590
>THE LAW OFFICES OF MICHELLE GESSNER, PLLC
>435 East Morehead Street
>Charlotte, North Carolina 28202
>Tel: (704) 234-7442
>Email: michelle@mgessnerlaw.com
>
>
>*Attorney for Plaintiffs*